IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KEVIN L. CURRY,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
Petitioner,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀CAUSE NO. 3:14-CV-2046
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
SUPERINTENDENT,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
Respondent.⠀⠀⠀⠀⠀⠀⠀)

<u>OPINION AND ORDER</u>

This matter is before the Court on the: (1) 28 U.S.C. § 2254 Habeas Corpus Petition by a Person in State Custody, filed by Kevin L. Curry, a *pro se* prisoner, on January 8, 2016; and (2) Motion to Object to the Respondent's Submission of the State Court Record, also filed by Kevin L. Curry, on July 11, 2016. For the reasons set forth below, the Court: (1) **DISMISSES WITH PREJUDICE** the Petition (DE 20); (2) **DENIES** the motion to object (DE 30); and (3) **DECLINES** to issue a certificate of appealability.


<u>BACKGROUND</u>

Curry is serving a 44-year sentence for being convicted on one count of corrupt business influence, fifteen counts of forgery, and his adjudication as a habitual offender, in *State v. Curry*, 20D02-0907-FC-0096. In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Curry's burden to rebut this presumption with clear and convincing evidence. *Id*. On appeal from the denial of

post-conviction relief, the Indiana Court of Appeals summarized the

facts underlying Curry's offenses as follows:

> Curry created, forged, and cashed checks by using other
> individuals to present the checks for cashing as
> purported payroll checks. In each instance, after cash
> was obtained, Curry split the sum with the presenter of
> each false check. On July 1, 2009, the State charged
> Curry with one count of Class C felony corrupt business
> influence and fifteen counts of Class C felony forgery.
> *Curry v. State,* No. 20A03-1008-CR-454, slip op. at 4
> (Ind.Ct.App. May 31, 2011), *trans. denied.* Attorney Mark
> Manchak represented Curry from August 2009 until November
> 2009, when Curry elected to proceed *pro se.* Manchak
> served as standby counsel from November 23, 2009, through
> January 2010. On January 27, 2010, the State filed an
> amended information, adding a habitual offender count.
> Attorney James Stevens entered his appearance for Curry
> on February 19, 2010. On June 24, 2010, a jury found
> Curry guilty on Counts I through XVI and subsequently
> found him guilty on the habitual offender count.

> On direct appeal, Curry raised several issues: (1) the
> denial of his motion for a directed verdict; (2) the
> sufficiency of the evidence; (3) the belated amendment of
> the charging information to include an habitual offender
> enhancement; and (4) the appropriateness of his sentence.
> [The Indiana Court of Appeals] remanded for clarification
> of his sentence but affirmed in all other respects. [The
> Indiana] Supreme Court denied transfer [on October 11,
> 2011]. Ex. C.

> In April 2012, Curry filed a petition for post-conviction
> relief, which he later amended. He raised three issues:
> (1) ineffective assistance of trial counsel; (2)
> ineffective assistance of appellate counsel; and (3)
> prosecutorial misconduct. After a hearing, the post-
> conviction court denied Curry's petition except with
> respect to his ineffective assistance of appellate
> counsel argument regarding his habitual offender
> enhancement. The post-conviction court ordered a new
> trial regarding the habitual offender enhancement.

*Curry v. State*, Cause Number 20A03-1312-PC-513, slip op. 2-3 (Ind.
Ct. App. Aug. 11, 2014) (DE 25-12, attached as Ex. L.)

Curry appealed from the denial of post-conviction relief regarding his ineffective assistance of trial counsel claims. (DE 25-9, attached as Ex. I.) The Indiana Court of Appeals affirmed the denial of post-conviction relief, finding that his trial counsel was not ineffective. (EX. L.) Curry sought transfer to the Indiana Supreme Court, (DE 25-13, attached as Ex. M), which was denied (DE 25-4, attached as Ex. D).

Pursuant to the grant of post-conviction relief, Curry was re-tried on the habitual offender count and was again convicted on that charge. On appeal from that re-trial, Curry challenged the propriety of the evidence admitted at trial, the sufficiency of the evidence, and whether the trial court erred by allowing the State to add the habitual offender enhancement. (DE 25-16 at 2, attached as Exhibit P.) The Indiana Court of Appeals affirmed his habitual offender adjudication, (DE 25-17, attached as Ex. Q), and the Indiana Supreme Court ultimately denied transfer (DE 25-20, attached as Ex. T).

Curry initiated federal habeas proceedings on November 26, 2014, and filed a second amended petition on January 8, 2016, claiming: (1) that both his retained trial counsel and standby counsel provided ineffective assistance; (2) the evidence was insufficient to support the habitual offender enhancement; and (3) that the State did not present sufficient evidence to support his

conviction under the Indiana Corrupt Business Influence statute. (DE 20 at 3-8.)

DISCUSSION

Curry's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with

4

federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is contrary to federal law if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant U.S. Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from U.S. Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* This is a difficult standard to meet, and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, —U.S.—, 131 S. Ct. 770, 786 (2011). Instead, to obtain relief, a petitioner must show the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

A.  <u>Ineffective Assistance of Counsel</u>

Curry raises three separate ineffective assistance of counsel claims. In claims one and two, Curry asserts that his retained trial counsel, Attorney James Stevens, provided ineffective assistance. (DE 20 at 3-4.) In claim three, Curry asserts that his standby counsel provided ineffective assistance. "The Sixth Amendment entitles criminal defendants to the 'effective assistance of counsel'---that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, ---U.S.---, 130 S. Ct. 13, 16 (2009).

The governing Supreme Court case for resolving an ineffective assistance claim is *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel under *Strickland*, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. The court's review of counsel's performance is "highly deferential," and the petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004). The prejudice prong requires the petitioner to show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Where it is expedient to do so, a court may resolve an ineffective

assistance claim solely on the prejudice prong; in other words, where the petitioner cannot establish prejudice, there is no need to consider in detail whether counsel's performance was constitutionally deficient. *See Strickland*, 466 U.S. at 697; *Watson v. Anglin*, 560 F.3d 687, 689-90 (7th Cir. 2009).

Here, in rejecting all three of Curry's ineffective assistance claims, the Indiana Court of Appeals properly identified *Strickland* as the governing standard. (See Ex. L at 4.) Of course, this Court's review of the state court's application of *Strickland* is not *de novo*. This review is limited to whether the state appellate court's determination that Curry was not denied effective assistance of counsel "was contrary to, or involved an unreasonable application of" *Strickland*. *Richter*, 131 S.Ct. 788. Accordingly, the question for this court is whether the appellate court's resolution of the claims was unreasonable.


Counsel's health

In ground one, Curry claims that his trial counsel's performance was detrimentally affected by his health. On February 19, 2010, Attorney Stevens entered his appearance to represent Curry in his criminal case. (Trial App. at 13, 146). Attorney Stevens moved to continue the scheduled March 9, 2010, trial. (Trial App. at 145.) The continuance was granted and a jury trial commenced on June 22, 2010, and ended with the jury finding Curry

guilty as charged on June 24, 2010. (Trial App. at 15-16, 144; Trial Tr. 487-88, 411.) Attorney Stevens died of pancreatic cancer on December 31, 2010. (PCR Tr. at 9; PRC Ex. 5c.)

Curry points out that Stevens died of pancreatic cancer a few months after the trial and argues that Steven's health must have impaired his performance at trial. The appellate court rejected Curry's ineffective assistance claim pertaining to his counsel's health and untimely passing, finding that Curry presented no evidence at the post-conviction proceedings to support his claim. (Ex. J at 7.) This determination was not unreasonable. Upon review, the only witness Curry called at the post-conviction hearing concerning Attorney Stevens' health was Rowena Gutierrez. She testified that she was a licensed practical nurse and had worked with cancer patients in the past. (PCR Tr. at 57-58.) During the trial, she observed that Attorney Stevens had lost some weight. However, she admitted that she did not have any professional medical contact with Attorney Stevens as a patient. (Id. at 60.) Because there is no evidence in the record that Attorney Stevens' health adversely affected his representation of Curry, the state appellate court's finding was not unreasonable.

Failure to call witnesses

In ground two, Curry claims Attorney Stevens was ineffective for failing to call various defense witnesses. The Indiana Court of

appeals rejected this ineffective assistance claim, finding that Curry presented no evidence at the post-conviction proceedings to support his claim. Specifically, the court of appeals found that Curry had not established any resulting prejudice:

> As for Stevens's failure to call witnesses, Curry identifies Rowena Gutierrez, Dannell Brown, Rachel Koontz, Tracy Curry, and Thurman Curry as witnesses that should have been called. Curry was required to demonstrate what those witnesses would have testified to and how he was prejudiced by the failure to call the witnesses. Of those, only Gutierrez testified as the post-conviction hearing. She testified only that she was a licensed practical nurse and had worked with cancer patients. There was no evidence presented concerning what those witnesses would have testified to at the trial. Curry has failed to demonstrate that Stevens's performance was deficient due to his failure to call witnesses at trial or that he was prejudiced by the alleged deficiency.

(Ex. L at 7.) Based on the record, this determination was not unreasonable. To satisfy the prejudice prong, Curry must establish that, if Attorney Stevens called these witnesses at trial, there would have been "a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This Curry failed to do. In undertaking this inquiry, the court considers "the totality of the evidence before the judge or jury. A verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001) (citations omitted). As the court

of appeals points out, the evidence against Curry was rather strong:

On November 1, 2008, Curry went to Martin's Supermarket ("Martin's") and attempted to cash a check. However, because he had previously cashed a counterfeit check there, an alert had been placed on his name, and the clerk refused to cash the current check. Instead, she notified her manager. Curry explained to the manager that he had received both checks as donations to his boxing club. The manager notified police, and Curry subsequently entered into a repayment arrangement with Martin's.

On November 19, 2008, Curry approached longtime friend Kim Kie and asked her to cash some counterfeit payroll checks that he made. Kie was a drug user at the time. Curry drove her to Martin's and gave her a purported payroll check and a business card from J.R. Cleaning Service ("J.R.'s"). Kie successfully cashed the false check, and the two split the money. The next day, they successfully repeated the process at a different Martin's location, again with a purported payroll check made out to Kie by J.R.'s.

Thereafter, Curry made a counterfeit payroll check from Ancon Construction Company, payable to Kie. Kie gave the check to an elderly disabled woman named Martha George to hold, in exchange for which Martha withdrew money from her savings account and gave it to Kie. That same week, Curry and Kie repeated the process with a check purportedly from Ameritrans Bus Service ("Ameritrans"), and Martha again gave Kie cash from her bank account. Curry then made a payroll check purportedly from Fred's Towing Service ("Fred's Towing"), payable to Kie. Kie cashed it at a local gas station. Each time Kie obtained cash, she and Curry divided it.

Later, Curry and Kie gave Joeleanna Taylor a false check from Fred's Towing. Kie drove Taylor to the same gas station, but when Taylor attempted to cash the check, it was refused. Kie then took her to a Marathon station, where the check was accepted for cash. Taylor cashed three counterfeit checks for Kie and Curry at Martin's. Kie gave Curry the cash, and he took half and gave the remainder to Kie and Taylor to divide.

Avengela Jones cashed four counterfeit checks from Curry, purportedly issued as payroll checks from either Peddler's Village Auction or Mike's Towing Service. Each time, Curry would drive her to either a Martin's or a Marathon station, and after she returned with the cash, the two would divide it. Jones was a drug user at the time.

In December 2008, Curry approached another old friend, Carla Thomas, to see if she was interested in making some extra cash. Twice, he drove her to Martin's stores, where she cashed checks purportedly from Ameritrans, and the two split the money. Thomas testified that she had seen Curry make the checks on his computer. Tr. at 299-300, 304.

That same December, Michael Jackson was at a local gas station when a man fitting Curry's description approached him about a "quick money" deal. Jackson was unemployed and expecting a baby. He did not know the man who approached him but recognized him as someone from the neighborhood. The man gave Jackson a false payroll check from Honker's Expert Catering and drove him to Martin's. When Martin's refused the check, Jackson left and went home.

Elkhart Police Detective Susan Lambright began an investigation in late 2008 and early 2009 and discovered a pattern regarding the counterfeit checks. For example, they bore the same fonts, watermarks, and routing numbers and were purportedly from the same handful of local companies, contained the same misspellings, and were made with the same kind of colors of paper. When Detective Lambright questioned the purported payees listed on the checks, three of them said that Curry had provided the checks to be cashed, and the other two provided a description that fit Curry's physical traits. At Curry's home, police found a green sedan matching the descriptions provided by all five payees.

*Curry v. Indiana*, 20A03-1008-CR-454, slip op. at 2-5 (Ind. Ct. App. May 31, 2011).

Curry has failed to establish that any of his potential witnesses would have reasonably placed his convictions in doubt. The only potential witness who testified at the post-conviction hearing was Rowena Gutierrez. She merely testified that she would have testified consistently with a previously completed affidavit about events from 6 p.m. to 8:20 p.m. on December 16, 2008. (PCR Tr. 48; PCR App. 55.) At the PCR hearing, she did not state what

those events were or what she had previously stated in that affidavit. The affidavit itself was deemed inadmissible hearsay. (PCR Tr. 53-54, 67, 69.) Consequently, limiting its review to the evidence before the state court, this court finds that the court of appeals adjudication of this claim was reasonable. There has been no showing that the state court's decision was contrary to, or an unreasonable application of, *Strickland* or any other clearly established federal law.

As an aside, Curry argues that various affidavits from potential witnesses were impermissibly stricken during the post-conviction proceedings. However, this court is bound by the state court's decisions regarding admissibility of evidence.[1] *See Earls v. McCaughtry*, 379 F.3d 489, 495 (7th Cir. 2004) (federal habeas court bound by state court's determination that evidence at issue was admissible under state law in assessing ineffective assistance).

Plea Agreement advice from Standby Counsel

Next, Curry claims that Attorney Mark Manchak provided him with ineffective assistance in connection with a plea agreement. Notably, Attorney Manchak only represented Curry for three months before Curry elected to proceed *pro se.* (PCR Tr. at 127, 142.) Attorney Manchak and the State did not engage in any plea

---

[1] And, to put any doubt to rest, this Court has reviewed the stricken affidavits, and, even if they are taken as true, there is nothing exculpatory in them that would change this Court's conclusion. (Appellants App. 45-62.)

negotiations while he represented Curry. (Id. at 137.) While Curry was *pro se* and Attorney Manchak was standby counsel, the State did offer Curry a plea agreement that would require him to serve 20 years. (Id. at 115.) That plea agreement was rejected by Curry.

Curry complains that sometime during his representation, Attorney Manchak informed Curry that the maximum term of imprisonment he could receive would be eight years. This, Curry claims, affected his decision to reject a plea agreement. The Indiana Court of Appeals held that Curry could not assert an ineffective assistance claim based on the advice, because at the time the plea agreement was offered and rejected, Curry was representing himself. (Ex. L at 8.) This is not an unreasonable decision, nor is it contrary to federal law. As this Circuit has acknowledged:

> This court knows of no constitutional right to effective assistance of standby counsel. As the word "standby" implies, standby counsel is merely to be available in case the court determines that the defendant is no longer able to represent himself or in case the defendant chooses to consult an attorney. A defendant who has elected to represent himself "cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"

*United States v. Windsor*, 981 F.2d 943, 947 (7th Cir. 1992) (citation and quotation omitted). Therefore, this cannot form the basis for habeas relief.


B.    <u>Habitual Offender</u>

Next, Curry claims the evidence was insufficient at trial to adjudicate him as a habitual offender. The Indiana Court of Appeals found there was sufficient evidence. It set out the following facts:

> On March 25, 2014, Curry's trial on the habitual offender enhancement began. At the trial, the court heard testimony from former Elkhart County Deputy Prosecuting Attorney Kristine Osterday ("DPA Osterday"), who was involved in the initial prosecution of Curry on the corrupt business influence charge underlying the retrial on the habitual offender enhancement.
>
> The court heard argument as to State's Exhibit 1, a certified copy of the 2007 Indiana conviction from Curry's guilty plea to counterfeiting as a Class D felony in the Elkhart Superior Court in cause number 22D02-0606-FC-221, which included an entry in the chronological case summary ("CCS") indicating that the instant case was a probation violation under Curry's 2007 Indiana conviction. State's Exhibit 1 contained an "Affidavit to Show Probable Cause" in the 2007 Indiana conviction for "Kevin L. Curry DOB: 03-10-64," an "Information Charging Forgery A Class C Felony, I.C. 35-43-5-2(a)(1)(A)" including a copy of a check with Curry's signature, a copy of a "Motion to Withdraw Plea of Not Guilty and Enter Pleas of Guilty, Plea Agreement, and Disclosure" including Curry's initials, "KC," next to each line of the plea agreement, an order noting that Curry "entere[ed] a plea of guilty to: COUNTERFEITING D FELONY," a sentencing order, and a twelve-page CCS for the 2007 Indiana conviction that included an entry stating that Curry had violated his probation in the 2007 Indiana conviction by committing the instant offense. State's Exhibit 1.
>
> Defense counsel objected to the admission of State's Exhibit 1, arguing that evidence of a probation violation was not relevant under Ind. Evidence Rule 401 and that "it would not withstand a balancing test under Indiana Rule of Evidence 403" because State's Exhibit 1 contained references to Curry's criminal history that were "unduly prejudicial and not probative, could mislead the jury and cause confusion of the issues." Transcript at 16. The court overruled the objection, stating that caselaw

supported the proposition that it is "not prejudicial to include evidence of a probation violation directly related to the habitual proceedings" and that the information in the exhibit was "relevant and it does not appear to the court to be counterbalanced by any significant prejudice." *Id*. at 17. Defense counsel also objected to sentencing information being included in State's Exhibit 1. The court struck the inclusion of the exact sentence length from the 2007 Indiana conviction. The court removed eleven pages of the CCS from the 2007 Indiana conviction but allowed the CCS entry showing the probation violation to remain in the exhibit, and published the exhibit to the jury as State's Exhibit 1A.

The court heard argument as to State's Exhibit 3, which contained a certified copy of a plea agreement from an August 29, 1990 offense in Texas for aggravated kidnapping, stamped "FELONY INFORMATION" at the top of the page, and dated September 13, 1990, the date of conviction for the offense, and included the length of Curry's sentence for that offense, which was seven years of probation, the conditions of probation for "Kevin Lavell Curry," and a reference that Curry violated his probation and was sentenced to five years in the Texas Department of Criminal Justice, institutional division, on July 14, 1993, as a result of the probation violation. State's Exhibit 3. The exhibit also contained prints of Curry's right thumb and right index finger, a signature for Kevin Curry, as well as his date of birth of 3-10-64, race, and sex. The portion of State's Exhibit 3 containing Curry's guilty plea agreement and conditions of probation was stamped with a Recorder's Memorandum, which states: "At the time of recordation this instrument was found to be inadequate for the best photographic recordation because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions, and changes were present at the time the instrument was filed and recorded." State's Exhibit 3. On the portion of the exhibit dealing with the July 14, 1993 probation violation, the Recorder's Memorandum states: "This instrument is of poor quality and not satisfactory for photographic recordation; and/or alterations were present at the time of filming." *Id*.

Defense counsel objected to the admission of State's Exhibit 3 on grounds that the exhibit was "not relevant ... prejudicial, [and] would not withstand [an] Indiana Rules of Evidence 403 balancing test...." Transcript at

17. Defense counsel also objected to the inclusion of the sentencing information in the exhibit. Defense counsel additionally objected that State's Exhibit 3 was of "poor quality" and that a recorder's stamp on various pages of the document indicated that the documents were "not as they were originally created" and that the exhibit "draw[s] into questions of authenticity about a witness." *Id.* at 51-52.

The court overruled the objection to including the reference to a probation violation but, although it redacted a specific reference to "the South Carolina charges which were quite serious in nature and which could be quite highly prejudicial" to Curry, it did not redact the general reference to the probation violation from State's Exhibit 3. Id. at 18. It also allowed the inclusion of the sentencing information because the charge in the Texas case was "already fully resolved." *Id.* at 20. The court also added that the exhibit did not appear to contain "any obvious alteration of the document and given the certification which is also provided ... the quality problems go to the [exhibit's] weight rather than admissibility." *Id.* at 53. The court redacted the specific reference to the reason Curry's probation was revoked in the Texas case and published the exhibit as State's Exhibit 3A to the jury.

The court next heard argument as to State's Exhibit 4, which contained an affidavit of the Chairman of Classification and Records for the Texas Department of Criminal Justice-Correctional Institutions Division, stating that the "attached information provided on inmate CURRY, KEVIN, TDCJ/BPP# 653544, cause# 573683, are true and correct copies of the original records now on file in my office maintained in the regular course of business within the Classification and Records Office of the Texas Department of Criminal Justice-Correctional Institutions Division." State's Exhibit 4. The exhibit also contained a certified booking photograph of Curry, a copy of the July 14, 1993 probation violation, and a fingerprint sheet with a signature of Kevin Lavell Curry. Defense counsel repeated the objections it raised as to State's Exhibit 3 and further asserted that the State's witness had no personal knowledge of the content of the documents, the State lacked a foundation for the exhibit's admissibility, and the exhibit had the same reference to a probation violation as in State's Exhibit 3. As to the objection that DPA Osterday lacked personal

knowledge of the contents of State's Exhibit 4, the court noted that State's Exhibit 4 was a certified copy and that it "comes in independent" of DPA Osterday and that defense counsel "might keep in mind that you may have an objection as to whether she has personal knowledge." *Id.* at 54. The court redacted the specific reference to the reason Curry's probation was revoked in the Texas case and published the exhibit as State's Exhibit 4A to the jury.

DPA Osterday testified that she was familiar with Curry from her work as a prosecutor and was able to provide the court with his birthdate, which is March 10, 1964. She identified Curry in the courtroom and testified that, as to the 2007 Indiana conviction and the instant case, Curry was "one in the same." *Id.* at 46. On cross-examination, DPA Osterday testified that she was not licensed to practice law in Texas, did not request DNA comparisons between the Indiana defendant and the Texas defendant, did not request fingerprint comparisons, "could not recall" whether she had requested a certified booking photograph from Texas, and was not an expert regarding handwriting samples. *Id.* at 69. On redirect, DPA Osterday testified that she believed she had obtained sufficient documentation "based upon the name matching Kevin Lavell Curry, the date of birth, March 10th 1964, as well as the signature" to prove Curry's identity. *Id.* at 70.

Defense counsel moved for a directed verdict, arguing that a name and date of birth is not enough to adjudicate an individual as an habitual offender. Defense counsel contended that, as to identity, the State introduced "a photograph with regard to the Texas conviction that depicts a black male with no physical characteristics identified" and "a fingerprint card without analysis," which taken together, "is insufficient as a matter of law to substantiate or support two prior unrelated felony convictions." *Id.* at 78. The court denied Curry's motion, finding "the State has at least met its minimum burden to get this case to the jury," reasoning that "we do have a name, we have the date of birth, we have the race and gender related to the Texas conviction" as well as a signature and photographs of Curry. *Id.* at 80.

On March 26, 2014, the jury found that Curry was an habitual offender.

Ex. P at 4-10.

Despite the Indiana Court of Appeals findings, Curry claims there was insufficient evidence because there was no DNA, physical characteristic evidence, no attempt to link the fingerprints to the Texas conviction, and no expert testimony. (DE 20 at 6-7.)

> The standard of review is a rigorous one: evidence, viewed in the light most favorable to the State, is sufficient to support a conviction so long as any rational trier of fact could find the essential elements of the offense to have been proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because we consider this claim on collateral review rather than direct appeal, [AEDPA] imposes an additional layer of defense onto this inquiry: we may grant relief on this claim only if the [State] Appellate Court applied the *Jackson* standard unreasonably to the facts of [the] case.

*Jones v. Butler*, 778 F.3d 575, 581-82 (7th Cir. 2015) (parallel citations omitted).

The record contains sufficient evidence supporting the jury's finding that Curry was a habitual offender. To start, the prosecution presented records of two prior felony convictions: a 1990 conviction for aggravated kidnapping and a 2007 forgery conviction in Indiana. (State's Exs. 1A, 2, 3A, 4A.) The prosecutor identified Curry in court as the defendant in both of those cases. (Tr. 42, 46, 49-50). The records from both of those convictions revealed that the defendant was a black male named Kevin Lavell Curry who was born on March 10, 1964. (State Exs. (2, 3A, 4A.) Booking photographs from both convictions were placed into evidence. (States Exs. 2, 4A.) Moreover, there were numerous

18

handwriting exemplars in both cases. (State Exs. 1A, 3A, 4A.) This is sufficient evidence to allow a jury to reasonably conclude that Curly was the same person on both the Indiana and Texas convictions to sustain his habitual offender adjudication. This is precisely what the Indiana Court of appeals held:

> As previously noted in Part I, the State admitted certified copies of Curry's two prior felony convictions, the 2007 Indiana conviction and the 1990 Texas conviction for aggravated kidnapping. As to identity, the State presented evidence that contained Curry's name, date of birth, fingerprints, and certified booking photographs, which enabled the jury to determine Curry's identity as the same person involved in the instant case, the 2007 Indiana case, and the Texas case. DPA Osterday also identified Curry in court, testified to his conviction in the 2007 Indiana case, and had requested certain records stemming from his 1990 Texas conviction in his first trial on the habitual offender charge. The photographs also provided the jury with a basis to compare the more recent photograph of Curry in State's Exhibit 2, which related to his conviction in the instant case, and notes his sex, race, hair color, eye color, height, weight, date of birth, and age with the booking photograph in State's Exhibit 4A from Kevin Lavell Curry's 1990 Texas conviction, and the jury could observe Curry as he appeared in the courtroom. Moreover, the records from the 2007 Indiana conviction and the 1990 Texas conviction include both Curry's full name, Kevin Lavell Curry, a date of birth of 3-10-64, as well as Curry's race, sex, and signature, which provided the jury with circumstantial evidence of Curry's identity. We conclude the State presented evidence of probative value from which the jury could have found Curry to be an habitual offender beyond a reasonable doubt. *See Heyen v. State*, 936 N.E.2d 294, 302–303 (Ind.Ct.App.2010) (finding that if the evidence yields logical and reasonable inferences from which the finder of fact may determine beyond a reasonable doubt that it was the defendant who was convicted of the prior felony, then a sufficient connection has been shown, and affirming the defendant's status as an habitual offender), *trans. denied*.

Ex. P at 17-18.

The Indiana Court of Appeals' holding was reasonable and a correct application of clearly established federal law. While Curry disagrees with the weighing of this evidence, that is not sufficient to warrant habeas relief. Re-weighing the evidence or reassessing the credibility of witnesses is not the court's function on federal habeas review.

## C.     Challenge to Indiana Corrupt Business Influence Conviction

Finally, Curry claims his conviction for corrupt business influence should be vacated. He complains that the jury was not asked to find - and thus did not find - that his "criminal acts pose[d] a threat of continued activity after arrest." (DE 28 at 13.) Essentially, Curry argues that this Court should read into the Indiana Corrupt Business Influence statue a requirement that a defendant's activity must also demonstrate that it "posed a threat of future criminal conduct," as set forth in the federal RICO statute. (DE 20 at 7.) The state argues that this argument is procedurally defaulted because he did not raise this issue in the State courts.

Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available remedies in the state courts. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). The exhaustion requirement is premised on concerns of comity; the state courts

must be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845.

The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a habeas petition when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state law procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Perruquet*, 390 F.3d at 514. When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 853-54.

A habeas petitioner can overcome a procedural default by showing cause for failing to abide by state procedural rules and a resulting prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default is defined as "some

objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986).

A habeas petitioner may also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 750. Under this narrow exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Here, Curry concedes that he did not raise this issue in the State courts. (DE 28 at 12.) He nevertheless argues that this Court should review the claim under the fundamental miscarriage of justice exception. To establish actual innocence under the miscarriage of justice exception, the petitioner must establish "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To do so he must come forward with new, reliable evidence and must establish that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. This, Curry does not do. As such, Curry has failed to establish actual innocence.

Even assuming Curry could overcome the procedural default, his claim has no merit. Although Curry argues that the Indiana Corrupt Business Influence statute should require a jury to find that his "criminal acts pose a threat of continued activity after arrest," that statute contains no such requirement. For all these reasons, this claim cannot form the basis of habeas relief.

D.    <u>Curry's Objection to State Court Record Submission</u>

Curry has filed a motion objecting to the respondent's submission of the state court record. (DE 30.) Curry claims that it does not include the jury instructions. In response, the Respondent asserts that he has submitted the entire state court record. (DE 25 at 28.) Upon review, the submitted state court record does include the preliminary and final jury instructions. (See App. Appendix at pp. 55-129). There appears to be nothing missing from the state court record. Because the Respondent has submitted the entire state court record, including the jury instructions, the motion will be denied.

E.    <u>Certificate of Appealability</u>

As a final matter, pursuant to RULE 11 of the RULES GOVERNING SECTION 2254 CASES, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the

petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, one of Curry's claims is procedurally defaulted, and he has not provided any meritorious basis for excusing his default. As to his remaining claims, Curry has not made a substantial showing of the denial of a constitutional right, nor could jurists of reason debate the outcome of the petition or find a reason to encourage him to proceed further. Accordingly, the Court declines to issue Curry a certificate of appealability.

CONCLUSION

For the reasons set forth below, the Court: (1) **DISMISSES WITH PREJUDICE** the Petition (DE 20); (2) **DENIES** the motion to object (DE 30); and (3) **DECLINES** to issue a certificate of appealability.

DATED: October 3, 2016      /s/RUDY LOZANO, Judge
                        United State District Court